**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**JONEL JANE SNIDER,**

**Plaintiff,**

**v.** **Case No. 25-CV-980**

**FRANK BISIGNANO,**
***Commissioner of Social Security*,**

**Defendant.**

---

# DECISION AND ORDER

---

## 1. Introduction

Plaintiff Jonel Jane Snider seeks disability insurance benefits, alleging that she has been disabled since April 16, 2021. (Tr. 65.) Snider's date last insured is September 30, 2026. (Tr. 12.) After Snider's application was denied initially and upon reconsideration (Tr. 65-87), a hearing was held before Administrative Law Judge (ALJ) Brent C. Bedwell on June 12, 2024 (Tr. 37-64). On July 15, 2024, the ALJ issued a written decision concluding that Snider was not disabled. (Tr. 7-25.) The Appeals Council denied Snider's request for review on May 7, 2025. (Tr. 1-4.) Snider filed this action on July 9, 2025.

## 2. ALJ's Decision

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one the ALJ

determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that Snider has not engaged in substantial gainful activity since April 16, 2021. (Tr. 12.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Snider has the following severe impairments: lumbar and cervical spine degenerative disc disease, bunion and hammertoe deformities of the right foot, status-post bunionectomy/osteotomy and tenotomy surgery, depression, anxiety, and attention deficit hyperactivity disorder. (Tr. 12.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or medically equal the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 404.1509, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the claimant does not have an impairment or combination of impairments that meets or medically equals the criteria of a listing, the analysis proceeds to the next step. 20 C.F.R. § 404.1520(e). The ALJ found that Snider's impairments did not meet or medically equal a listing impairment. (Tr. 13.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. § 404.1545(a)(1). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Snider has the RFC:

> …to perform sedentary work as defined in 20 CFR 404.1567(a) except: she can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps or stairs; she can occasionally stoop, crouch, kneel, and crawl; she cannot perform overhead reaching; she can frequently handle with the bilateral upper extremities; she can maintain attention, concentration, persistence and pace for simple tasks with regularly scheduled breaks; and she can perform jobs having only occasional decision-making and changes in the work-setting.

(Tr. 15.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. The ALJ concluded that Snider is unable to perform any past relevant work. (Tr. 23.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering Snider's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). At this step, the ALJ concluded that there were jobs that Snider could perform including Call-Out Operator (Dictionary of Occupational Titles (DOT)

Number 237.367-014); Addresser (DOT Number 209.587-0101) and Telephone Info Clerk (DOT Number 237.367-046). (Tr. 24.) Therefore, Snider was not disabled. (Tr. 25.)

**3. Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

**4. Analysis**

Snider challenges the ALJ's decision on three grounds. First, Snider argues that the ALJ failed to adequately evaluate the opinion of her treating physician, Dr. Zoeller. (ECF No. 13, at 8.) Second, Snider argues that the agency did not meet its

burden to establish the existence of a significant number of jobs that Snider could perform. (ECF No. 13, at 3.) Third, Snider argues that the ALJ's evaluation of her subjective symptoms was insufficient. (ECF No. 13, at 14.) The Court finds that the first alleged error on its own requires remand, so the Court will not consider the other two alleged errors.

### 4.1. Evaluation of Dr. Zoeller's Opinion

The regulations require ALJs to evaluate all of the medical opinions in the record. 20 C.F.R. § 404.1520c(b). When evaluating the persuasiveness of a medical opinion, an ALJ must consider the five factors listed in 20 C.F.R. § 404.1520c(c). Of those five, the two most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(a). Accordingly, an ALJ only needs to explain how they considered those two factors. 20 C.F.R. § 404.1520c(b)(2). An ALJ's failure to explain their application of the supportability and consistency factors is reversible error. *Joseph v. Bisignano*, No. 24-CV-1356, 2026 U.S. Dist. LEXIS 68906, at *12 (E.D. Wis. Mar. 31, 2026). An ALJ may explain how they considered the other factors, but they are not required to. 20 C.F.R. § 404.1520c(b)(2).

The supportability factor requires ALJs to determine how well the evidence and explanations provided by a medical source support their opinion. 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)…the more persuasive the medical opinions…will be." 20 C.F.R. § 404.1520c(c)(1). On the other hand, the consistency factor requires ALJs to

determine how consistent the opinion is with the other evidence in the record. *Kober v. Bisignano*, No. 25-C-1268, 2026 U.S. Dist. LEXIS 161006, *23 (E.D. Wis. July 21, 2026). The more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive that opinion will be. 20 C.F.R. § 404.1520c(c)(2).

Dr. Zoeller, Snider's treating physician, prepared a physical RFC questionnaire in February 2022. (Tr. 474-476.) According to Dr. Zoeller, Snider could sit or stand for 60 minutes consecutively (Tr. 474), sit for 6 hours total in a work day (Tr. 475), stand for 4 hours total (Tr. 475), and lift 10 pounds frequently (Tr. 476). Snider could occasionally perform postural activities but could rarely climb ladders. (Tr. 475.) Snider had no limitations with reaching, handling, and fingering. (Tr. 476.) And Snider did not require an assistive device for ambulation. (Tr. 475.) Additionally, Snider would require a job that would permit shifting from sitting to standing or walking at will and allow Snider to take an unscheduled break every 4 hours. (Tr. 475.) And Snider would be absent from a job about one day per month. (Tr. 476.)

The ALJ concluded that Dr. Zoeller's answers regarding Snider's "exertional, postural, and manipulative capacities" were consistent both with Dr. Zoeller's diagnostic testing and imaging and with the findings of other medical providers. (Tr. 20.) However, the ALJ did not find Dr. Zoeller's other answers persuasive. He stated:

> The undersigned declines to adopt the limitations for the need for an at-will sit/stand option, additional breaks, and absenteeism. These are speculative in that Dr. Zoeller fails to articulate any basis or reference to any objective or other evidence to support such limitations.

(Tr. 20.)

The ALJ failed to adequately explain his consideration of the supportability and consistency of Dr. Zoeller's opinion. (ECF No. 13, at 12.) First, the ALJ did not discuss whether Dr. Zoeller's answers regarding at-will sitting, additional breaks, and absenteeism were consistent or inconsistent with the non-medical sources or other medical sources in the record. Consequently, the ALJ did not adequately articulate his consideration of the consistency of Dr. Zoeller's opinion as is required by 20 C.F.R. § 404.1520c(b)(2).

Second, while the ALJ's labeling these answers "speculative" could be viewed as an attempt to discuss their supportability, that discussion falls short of the articulation requirements of 20 C.F.R. § 404.1520c(b)(2). As the ALJ notes, it is true that Dr. Zoeller did not cite specific evidence or write an explanation in support of his answers on the questionnaire. The questionnaire that Dr. Zoeller used was a check-box form that did not call for or leave space for Dr. Zoeller to explain his answers. Courts have recognized that check-box opinions are "less helpful than narrative discussions." *Regina P. v. Saul*, No. 19-CV-3155, 2020 U.S. Dist. LEXIS 134212, at *20-21 (N.D. Ill. July 29, 2020) (citing *Gebauer v. Saul*, 801 Fed. Appx. 404, 410 (7th Cir. 2020)). However, "the use of a check-list style form alone is not a good reason for rejecting a medical opinion." *Akey v. Kijakazi*, No. 21-CV-1345, 2023 U.S. Dist. LEXIS 56101, at *25 (E.D. Wis. Mar. 31, 2023) (citing *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010)). After all, the regulations direct ALJs to consider not only "supporting explanations," which may be limited in a check-box form, but also the "objective medical evidence" presented by a medical source. 20 C.F.R. § 404.1520c(c)(1). Thus,

a check-box form "takes on greater significance when it is supported by medical records." *Larson*, 615 F.3d at 751. As Snider points out, Dr. Zoeller's treatment records were provided, and Dr. Zoeller even referenced his notes on the questionnaire (Tr. 474). And yet, the ALJ never addressed whether Dr. Zoeller's treatment records support, or do not support, his answers regarding Snider's need for additional breaks and at-will position shifting or absenteeism. *Brandon P. v. Bisignano*, No. 23-CV-52, 2025 U.S. Dist. LEXIS 112907, at *7-8 (N.D. Ill. June 13, 2025) (quoting *Charlnette R. v. Dudek*, No. 23-CV-3184, 2025 U.S. Dist. LEXIS 57305, at *15-16 (N.D. Ill. Mar. 27, 2025)). This was an "error that, coupled with his failure to evaluate the consistency prong at all, seriously undermines" the ALJ's evaluation of Dr. Zoeller's opinion. *Brandon P.*, 2025 U.S. Dist. LEXIS 112907, at *8 (citing *Lakisha R. v. Kijakazi*, No. 20-C-7574, 2023 U.S. Dist. LEXIS 36699, at *9 (N.D. Ill. Mar. 6, 2023)); *see also Baizer v. Berryhill*, No. 16-C-2587, 2017 U.S. Dist. LEXIS 50199, at *18 (N.D. Ill. Apr. 3, 2017) (holding that an ALJ erred by rejecting treating physicians' opinions as conclusory without taking their treatment records into account).

Moreover, the ALJ's evaluation of Dr. Zoeller's opinion is internally inconsistent. The ALJ concluded that Dr. Zoeller's answers regarding additional breaks, at-will position shifting, and absenteeism were speculative because Dr. Zoeller did not explain or reference evidence in support of those answers. (Tr. 20.) But the ALJ also concluded that Dr. Zoeller's answers regarding Snider's exertional, postural, and manipulative capacities were persuasive, rather than speculative, (Tr. 20) even though Dr. Zoeller did not explain or reference any evidence in support of

those answers either (Tr. 474-476). The ALJ did not explain why those answers were not "speculative" while his answers relating to breaks, absenteeism, and position shifting were. Because his evaluation of Dr. Zoeller's opinion is internally inconsistent, the ALJ failed to build the required logical bridge between the evidence and his conclusion. *Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021).

**5. Conclusion**

Because the ALJ failed to adequately address the consistency and supportability of Dr. Zoeller's opinion, remand is appropriate. Since this issue alone requires remand, the Court does not address Snider's remaining arguments. However, to aid in reaching a final resolution of this case and to avoid further remands in the future, the Commissioner should also address Snider's other claims of error.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Green Bay, Wisconsin this 17th day of August, 2026.

*s/ Byron B. Conway*
BYRON B. CONWAY
United States District Judge